UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

Eastern District of Kentucky
**FILED**

**JUN 2 5 2007**

AT LONDON
LESLIE G WHITMER
CLERK U S DISTRICT COURT

CRIMINAL NO. 07-24-DCR

UNITED STATES OF AMERICA                                   PLAINTIFF

v.                         RECOMMENDED DISPOSITION
                           OF MOTION TO DISMISS

MICHAEL ROY REDMOND                                        DEFENDANT

\* \* \* \* \* \* \*

The Court conducted a comprehensive evidentiary hearing in this matter on May 29 and 31,

2007 concerning three then-pending motions. The hearing addressed motions by Defendant Michael

Roy Redmond seeking suppression of certain evidence, suppression of proffer statements, and

dismissal of the indictment. *See* DE#s 52, 53, & 54.

Defendant conceded at the conclusion of the hearing that the United States had carried its

burden concerning the motion to suppress evidence.[1] *See* DE# 88. The Court accordingly denied

that motion. *See id.* Similarly, in its post-hearing brief, the United States conceded that, relative to

the proffer statements, Defendant did not knowingly waive the protections of Federal Rule of

Evidence 410. *See* DE# 95 Supplemental Response, at 1-2 (noting "insufficient evidence" of

---

[1]

The motion sought to suppress fruits of a warrantless search, prior to Defendant's arrest, as
well as statements Defendant made around the time of the search. As Defendant's concession
reflects, the hearing record indicated that Redmond granted valid consent for the search, and that law
enforcement properly Mirandized Redmond prior to questioning him. *See* DE# 92 May 31 Hearing,
at 10 (consent), 12 (*Miranda* warning).

knowing waiver by Defendant). As such, the United States concedes that suppression is proper[2] as

to any proffer statements by Defendant made during plea negotiations.[3] *See id.*

    The remaining post-hearing item for resolution is Defendant's motion to dismiss the

indictment. Defendant premises the motion on the Government's alleged violation of the Speedy

---

[2]

    This concession validly reflected the testimony, which did not establish an agreement by Defendant to waive his rights under FRE 410, as clarified by *United States v. Mezzanato*, 115 S. Ct. 797, 806 (1995)(enforcing "agreement to waive the exclusionary provisions of the plea-statement Rules" absent "some affirmative indication that the agreement was entered into unknowingly or involuntarily"). Here, the United States did not prove an agreement to waive, and no testimony suggested that any waiver would have been a knowing one. *See* DE# 92 May 31 Hearing, at 95 (colloquy addressing absence of waiver).

[3]

    Woven within Defendant's proffer statement motion is further argument to suppress evidence *derived* from those statements. Because Rule 410 governs "any *statement* made in the course of plea discussions," the Rule does not address derivative use, and whether Defendant waived that provision is therefore irrelevant to Defendant's derivative use claim. *See* Fed. R. Evid. 410. Rather, the terms of the proffer agreement itself would govern the admissibility of evidence derived from Defendant's proffer statements.

    Here, the testimony reflects that the United States agreed that it would not use direct or derivative evidence from Defendant's proffer statements against him, although the parties did not use the term "derivative evidence" specifically. *See* DE# 91 May 29 Hearing at 14, 17, 21-22, 127, 139 (Agent Gray, agreeing that "as long as he'd been truthful then that [proffer] information can't be used against him"); DE# 92 May 31 Hearing, at 40 (Gray agreeing that proffer "could not" be used against Redmond "unless he lied"), 48, 70-71, 73. This view is consistent with the events that unfolded. The Commonwealth of Kentucky indicted Defendant on state charges related to evidence derived from Defendant's proffer statements. In accordance with the proffer agreement, the United States worked with state authorities to effect dismissal of those state charges. *See* DE# 91 May 29 Hearing, at 138-39. The course of conduct reinforces that the parties agreed against derivative evidence use. The United States acknowledge that "the weight of the evidence is on the defendant's behalf" concerning the derivative use status. *See* DE# 92 May 31 Hearing, at 88 (further suggesting potential *Kastigar* hearing, to test source of evidence, if contested evidence were to arise).

    Given that the United States indicates that it is not aware of any relevant derivative use of the proffer statements, there is no evidence to suppress. However, the Court does find, based on the record, the concession of the United States, and the parties' conduct, that the parties agreed that the United States could not use Defendant's proffer statements to derive other evidence or charges against Redmond.

Trial Act (STA), specifically the timing requirements applicable to indictment. *See* 18 U.S.C. § 3161(b). The United States concedes that it violated § 3161(b). *See* DE# 92 May 31 Hearing, at 119; DE# 34 Response to Motion to Dismiss, at 2 ("There is also no dispute that 30 days elapsed since the Defendant revoked his waiver, requiring dismissal of the Complaint under 18 U.S.C. § 3162(a)); DE# 95 Supplemental Response, at 2.

Non-compliance under that section *requires* dismissal of the underlying charges. *See* 18 U.S.C. § 3162(a)(1)("If . . . no indictment . . . is filed within the time limit required by section 3161(b) [*i.e.*, within thirty days from the date on which such individual was arrested] as extended by section 3161(h). . . such charge against that individual contained in such complaint shall be dismissed or otherwise dropped."); *Zedner v. United States*, 126 S. Ct. 1976, 1984 (2006)(discussing trial clock: "[I]f a meritorious and timely motion to dismiss is filed, the district court must dismiss the charges, though it may choose whether to dismiss with or without prejudice."); *United States v. Taylor*, 108 S. Ct. 2413, 2417 (1988)(discussing trial clock and stating, "[T]he statute admits no ambiguity in its requirement that when such a violation has been demonstrated," dismissal is mandatory.). The nature of the dismissal–whether with or without prejudice to reprosecution–is within the District Court's "guided discretion." *See Taylor*, 108 S.Ct. at 2418; 18 U.S.C. § 3162(a)(1). In this case, the parties dispute the appropriate form of dismissal, and whether the Court must require re-indictment at this juncture if the Court determines that any sanction should be without prejudice.

3

The parties have briefed the Speedy Trial Act motion thoroughly, and the Court received extensive testimony and oral argument at the two-day evidentiary hearing.[4]  *See* DE#s 93 & 95, Supplemental Briefs.  The matter now stands submitted and is ripe for review.  For the reasons stated herein, the Court recommends that the District Court dismiss the indictment without prejudice.

### Factual Background

Law enforcement arrested Defendant on March 2, 2006.  *See* DE# 91 May 29 Hearing, at 58.  Authorities instituted federal charges on March 3, 2006, and Defendant appeared in federal court that same day.  *See* DE# 1 Complaint; DE# 4.  This Court initially detained Defendant and set a detention hearing on March 9.  *See* DE# 7.  At the March 9 proceeding, AUSA Martin Hatfield evidently approached Defendant's then-counsel, Ralph Gibson, to discuss whether Defendant "may be interested in assisting the United States."  *See* DE#91 May 29 Hearing, at 10.  Counsel conferred with Defendant and later related to the United States that Defendant had interest in cooperating.  *See id.* at 11.

The first substantive meeting between Defendant and the United States occurred on or about April 7, 2006.  *See id.* at 12, 125.  Defendant, Gibson, AUSA Hatfield, DEA Special Agent David Gray (the investigating officer in this case), and Cumberland Drug Task Force Officer Robbie Clark (assisting investigating officer) all attended.  *See id.* at 12, 126-27.  At length, the United States reviewed the procedures, the expectations, the potential substantial assistance recommendation, and the recommendation's impact at sentencing.  *See id.* at 12-13, 21, 127; DE# 92 May 31 Hearing, at

---

[4]

Witnesses included Defendant's former attorney in the case, Ralph Gibson, DEA Agent Gray, and Michael Redmond himself.  Former AUSA Martin Hatfield, though intimately involved in the facts at issue, did not testify.  Defendant tried unsuccessfully to subpoena him, *see* DE# 84, and the United States elected against calling Mr. Hatfield as a witness.

26-27. After the introduction, Defendant provided the United States with a proffer statement. *See* DE# 91 May 29 Hearing, at 128. Agent Gray testified that the information was truthful, but incomplete. *See id.*

Defendant provided additional information at a second proffer session on or about May 8, 2007. *See id.* at 129. That session included Defendant, Gibson, AUSA Hatfield, and Agent Gray. *See id.* at 129. Gray again believed that Defendant provided truthful, but incomplete statements. *See id.* at 130. The information, however, did lead to the recovery of a firearm in late May. *See id.* at 19, 131-32. Testimony reflects that the parties did not discuss specific plea agreement terms at the May 8 meeting. *See id.* at 129-30.

After the May 8 proffer session, Defendant moved for release from custody on May 9, 2006. The United States did not oppose the motion, and hoped that Defendant could engage in "proactive cooperation" on release. *See id.* at 132-33. With no objection, the Court granted the motion and released Defendant on strict conditions. *See* DE#s 13-14. Defendant began release on May 11, 2006.

At about the same time, Defendant and Gibson executed a purported Speedy Trial Act waiver on May 10, 2006. *See* DE# 12. That waiver stipulates that Defendant and the United States were engaged in "ongoing plea negotiations" at the time. *See id.* According to Gibson, Hatfield proposed the waiver at the May 8 proffer session. *See* DE#91 May 29 Hearing, at 17-18.

A third proffer session occurred on or about June 14, 2006, at Gibson's law office. *See id.* at 19-20, 134. The meeting included Defendant, Gibson, Agent Gray and TFO Clark. *See id.* at 20, 134. AUSA Hatfield did not attend. *See id.* at 20, 134. Defendant provided information that Gray again believed to be truthful. *See id.* at 134. Gibson testified, however, that the parties did not

5

discuss or exchange specific plea agreement terms at the June 14 meeting or at any time prior to that proffer session. *See id.* at 21. At the conclusion of the meeting, Gray indicated that he needed approval to take further action in the matter, and that he would make contact with Defendant after receiving authorization. *See id.* at 20-21, 22, 35.

Agent Gray apparently did not follow-up with the defense after the meeting. Indeed, the matter remained essentially inactive from June until sometime after August 23, 2006, when state authorities indicted Defendant in Pulaski Circuit Court. *See id.* at 22. Testimony reflects that Defendant's proffer statements indirectly led to the state charges, which addressed alleged stolen property. *See id.* at 25-28, 138-39. Gibson, upset by the development, contacted Agent Gray and AUSA Hatfield. *See id.* at 25, 138. According to the testimony, neither Agent Gray nor AUSA Hatfield intended or expected the state charges. *See id.* at 25-28, 137-38. It appears that AUSA Hatfield ultimately resolved the matter with local officials, who dismissed the state indictment on October 3, 2006. *See id.* at 139-140.

In the midst of, and perhaps prompted by, the state indictment controversy, the United States finally submitted a proposed plea agreement. The Government asserted that it tendered the document on September 1, 2007, but Gibson testified that he did not actually receive the agreement until September 5, due to the Labor Day holiday weekend. *See id.* at 29. Except for some general discussions at the first proffer session in April, Gibson testified that the parties did not negotiate or exchange specific plea agreement terms prior to the September 1 document. *See id.* at 30-32.

Gibson did not promptly respond to the Government's proposal. He explained that his focus at the time was on the newly-pending state charges. *See id.* at 33-34. Once he had reviewed the plea document, and resolved the state charges, Gibson grew concerned about the plea terms. *See id.* at

6

35-36. The proposed plea carried a possible life sentence. Considering Redmond's cooperation, Gibson felt the penalty range under the plea agreement was inconsistent with Defendant's expectations. *See id.* at 32, 35-36.

Eventually, in October, defense counsel arranged a meeting with the United States to discuss the proposed plea agreement, but that meeting did not occur until mid to late November of 2006. *See id.* at 36; DE#92 May 31 Hearing, at 4. Defendant, Gibson, AUSA Hatfield, and Agent Gray all attended. *See* DE#91 May 29 Hearing, at 36; DE# 92 May 31 Hearing, at 5. Based on the testimony, it appears that Gibson wanted the United States to agree to a specific term of imprisonment or at least reduce the drug quantity alleged in the plea agreement. *See* May 29 Hearing, at 39-40; May 31 Hearing, at 5, 31. Because federal law vests sentencing authority with the District Court, Gray and Hatfield explained to Gibson that the Government could not promise a specific penalty. *See* May 31 Hearing, at 5. Gibson related that the United States did not negotiate the drug quantity. *See* May 29 Hearing, at 40. According to both Gibson and Gray, however, Hatfield did represent at this meeting that Defendant had already provided substantial assistance. *See* May 29 Hearing, at 37-38; May 31 Hearing, at 31-32, 46. Following the November meeting, Defendant and the United States did not engage in further plea discussions for the rest of 2006. *See* May 29 Hearing, at 42. Gibson left the November meeting perceiving that the United States had presented Redmond with a "take it or leave it" deal. *See id.* at 39 ("[I]t was my understanding that these are the terms, accept or decline.").

In late November, the USPO sought permission to discontinue Defendant's court-imposed electronic monitoring based on Defendant's perceived compliance with release conditions. With no objection from the United States, the Court removed the restriction. *See* DE# 17. Ironically, when

the USPO arrived to remove the EM equipment from Defendant's residence, Defendant field-tested positive for cocaine; that event led to revocation proceedings.

The Court originally scheduled the revocation hearing for January 11, 2007.[5] However, the parties mutually agreed to continue the matter, and the Court reset the hearing for January 19. *See* May 29 Hearing, at 43; DE# 24. Gibson acknowledged that the purpose of the agreed delay was to allow plea discussions. *See* May 29 Hearing, at 43. Consequently, the parties met on January 17, 2007. *See id.* at 44. According to Gibson, AUSA McBride, like Hatfield, conceded at the meeting that Defendant already had provided substantial assistance. *See id.*

However, it appears that the parties left the January 17 meeting with different expectations going forward. The United States expected Defendant either to accept or reject the plea agreement at the January 19 bond violation hearing. Gibson, on the other hand, believed the parties would meet again prior to the proceeding. *See* DE# 30 Bond Violation Hearing, at 2 ("[I]t was my understanding that we were going to meet again prior to the conducting of this hearing."). In addition, McBride did not attend the January 19 revocation hearing. Instead, AUSA Stephen Smith appeared on behalf of the Government. Because of the confusion, the Court afforded the parties a brief opportunity to confer. *See id.* at 3; May 29 Hearing, at 47. Gibson testified that no substantive plea discussions developed. *See* May 29 Hearing, at 48. At the end of the hearing, the Court took the revocation matter under advisement.

---

[5] About the time of the January 11 hearing, AUSA Robert McBride replaced AUSA Hatfield as the lead prosecutor in the matter. As a result, McBride appeared on the Government's behalf at the hearing. *See* May 29 Hearing, at 43.

8

The Court scheduled a status conference on January 29, 2007, announced bond revocation, and ordered Defendant's return to federal custody. *See* DE#s 28 & 29. In response to a query from the Court,[6] Defendant also expressly withdrew his Speedy Trial Act waiver at the proceeding. *See* DE# 94, January 29 Hearing, at 6-7; DE# 29. Gibson testified that no substantive plea discussions occurred at the January 29 proceeding or during the period between that proceeding and the January 19 revocation hearing. *See* May 29 Hearing, at 48. The United States agrees that Redmond's withdrawal from the STA waiver signaled commencement of the speedy trial clock (if it had ever stopped) and also signaled withdrawal from plea negotiations. *See* Exhibit 5, May 29 Hearing (e-mail from AUSA McBride to Gibson: "[I]t is clear to me now that Mr. Redmond withdrew from negotiations with the United States on January 29, 2008, when he revoke[d] his waiver."); DE# 94 January 29 Hearing, at 4 (AUSA Smith: "[O]bviously by the ruling of the Court, and his [waiver] revocation, I think that that pretty much sets things in motion from our standpoint."); DE# 92 May 31 Hearing, at 113 (United States agreeing that, when waiver pulled on January 29, from defense perspective "plea negotiations were ended").

After the January 29 conference, the United States allegedly contacted defense counsel by telephone on February 24, 2007, some twenty-six days later. Gibson was unavailable and did not return the call. McBride then emailed Gibson on February 26 to assess Defendant's interest in the proposed plea agreement. Defense counsel basically responded that Redmond had terminated the Speedy Trial Act waiver and planned to move for relief under the STA "if he is not indicted within

---

[6]
The Court had developed independent concerns about the timeliness of the prosecution, after reviewing the purported waiver in the case, noting the absence of a party-only waiver mechanism in the STA, and reading the Supreme Court's decision rejecting prospective STA waivers in *Zedner v. United States*, 126 S. Ct. 1976 (2006).

9

the time frame provided by the act[.]" *See* Exhibit 5 May 29 Hearing (February 26 email). On February 27, McBride replied, "Based upon Mr. Redmond's position, I will assume that he does not want to cooperate with the United States." Gibson coyly answered, "Please do not form assumptions related to Mr. Redmond." *See id.* On February 28, 2007, in the absence of an indictment, Defendant moved to dismiss the criminal complaint due to non-compliance with the STA. *See* DE#s 32 & 33. As here, the motion urged the Court to dismiss the matter with prejudice. The United States conceded the Speedy Trial Act violation, but the Government argued against dismissal with prejudice. *See* DE# 34.

Because the United States conceded the violation, the Court anticipated an imminent dismissal. As such, the Court ordered Defendant's release on March 2, 2007, but did not rule on the nature of the expected dismissal. *See* DE# 35. On the same day as the Court's release order, however, the Grand Jury returned an indictment against Defendant. *See* DE# 36, Indictment. The indictment led to Redmond's re-arrest, arraignment, and detention. *See* DE#s 40, 43, 47 (detention order).

Due to the return of an indictment, and after conferring with the parties, the Court denied as moot Defendant's then-pending motion to dismiss the underlying criminal complaint and directed Defendant to re-file the motion as to the indictment itself. *See* DE# 41. The pending Speedy Trial Act motion, evidentiary hearing, and supplemental briefing followed. On Defendant's motion, the Court permitted Redmond's retained defense counsel to withdraw and replaced him with counsel appointed under the CJA. *See* DE# 64. Counsel's role as a likely witness on pre-trial matters necessitated withdrawal.

10

## Analysis

### A.

In relevant part, the Speedy Trial Act requires the Government to secure an indictment or information within 30 nonexcludable days after a defendant's federal arrest or service with summons. *See* 18 U.S.C. § 3161(b). Here, the United States concedes that it violated § 3161(b) as to the period between January 29, 2007 and March 2, 2007. *See* May 31 Hearing, at 119 ("[Y]es, it was a violation.").[7]

To vindicate § 3161(b) non-compliance, the Act directs dismissal of the *charge* contained in the complaint.[8] *See* 18 U.S.C. § 3162(a)(1); *id.* (discussing factors in determination about

---

[7]

The Court also discusses an earlier, contested violation period in Part B(ii) of this Recommended Disposition.

[8]

However, the Speedy Trial Act, as relevant, applies only to the charge in or case presented by the complaint. Thus, an indictment is untimely and subject to dismissal only to the extent that it belatedly presents the same charge from the underlying complaint. *See United States v. Nabors*, 901 F.2d 1351, 1355 (6th Cir. 1990)(noting that Act does not require dismissal of "every offense chargeable from a criminal episode" but rather "only requires dismissal of the offense charged in the complaint"); *see also United States v. Gaskin*, 364 F.3d 438, 451-52 (2d Cir. 2004)(collecting cases and holding, per required "strict" construction due STA remedy, that indictment with "different charges from those in the complaint" is not subject to dismissal, as to such distinct charges, under § 3162(a)(1)). Moreover, this rule applies even if the charges in the indictment arise from the same criminal episode as those specified in the original complaint. *See Gaskin*, 364 F.3d at 451.

Here, the criminal complaint alleges that Defendant, on March 2, 2006, "[d]id knowingly conspire with others in the distribution of . . . Methamphetamine in violation of 21 U.S.C. § 846." *See* DE# 1, Complaint. By comparison, the indictment states that between June and September of **2005** Defendant "and others did conspire to knowingly and intentionally distribute 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine . . . in violation of 21 U.S.C. § 846." *See* DE# 36, Indictment. Thus, the complaint and the indictment both charge Defendant with conspiracy to distribute methamphetamine, but the documents allege different conspiracy dates, and the indictment charges a specific, aggravated drug quantity. Because of these differences, the charges in the complaint and indictment arguably represent different crimes. *See Gaskin*, 364 F.3d at 453 ("[D]ismissal is not warranted under § 3162(a)(1) if the indictment charge requires proof of elements distinct from or in addition to those necessary to prove the crimes pleaded

11

"whether to dismiss the *case* with or without prejudice")(emphasis added).  The nature of the dismissal requires discretionary assessment of the factors enumerated in § 3162(a)(1).  *See Taylor*, 108 S.Ct. at 2418; 18 U.S.C. § 3162(a)(1).  Those factors include: the seriousness of the offense; the facts and circumstances which led to the dismissal; and the impact of a reprosecution on the administration of the Act and the administration of justice.  *See* 18 U.S.C. § 3162(a)(1).  Evaluation of the final factor must also consider any prejudice that a defendant suffered from delay.  *See United States v. Robinson*, 389 F.3d 582, 589 (6th Cir. 2004).

The Court has wide discretion in applying these factors, although the Sixth Circuit instructs lower courts to articulate carefully the analysis under each statutory prong.  *See id.*  There is no presumption or provision under the Speedy Trial Act that specifically directs the Court to dismiss with or without prejudice.  *See United States v. Howard*, 218 F.3d 556, 561 (6th Cir. 2000).  The Court finds that each § 3162(a)(1) factor supports dismissal **without** prejudice in this case.

---

in the complaint."); *id.* (agreeing that additional "drug quantity" is an offense element that may distinguish complaint charge of conspiracy from indictment charge of conspiracy).  Simply put, if the charge in the indictment at issue is not the same charge as set forth in the complaint, there is no STA issue concerning the indictment.  In this scenario, the District Court simply would dismiss the original complaint, but the pending indictment would remain unaffected.

The United States did not make this argument.  Indeed, on multiple occasions, the United States expressly maintained that the complaint and indictment in this matter contain the same charge. *See* DE# 91, May 29 Hearing, at 147 (agreeing that "charges embodied in the indictment are the same charges that were contained in the complaint"); DE# 92, May 31 Hearing, at 126-27 (same). Certainly, the Information tendered to Defendant as part of plea negotiations, while the complaint was pending, contains the indictment's identical charge.  *See* Exhibit 4, May 29 Hearing.  Further, the affidavit supporting the complaint cites heavily to conduct that concerns the indictment charge rather than the complaint charge.  *See* DE# 1.  Although a *Gaskin*-type analysis strongly suggests a legitimate distinction between the complaint and indictment *charge*, which would eliminate any STA issue as to the indictment, the Court does not pursue the analysis on its own given the Government's explicit positions as to charge identity.

12

B.

*i) Seriousness of the Offense*

The indictment in the instant matter alleges that Defendant "did conspire to knowingly and intentionally distribute 500 grams . . . of methamphetamine," in violation of 21 U.S.C. §§ 841 and 846. *See* DE# 36, Indictment. The charge is a Class A felony, and based on Defendant's record, *see* DE# 59 (notice indicating two prior drug felonies), a conviction would require a mandatory life sentence. *See* 21 U.S.C. § 841(b)(1)(A). Defendant concedes that the alleged crime is serious under federal law. *See* DE# 93, Defendant's Supplemental Memo, at 11; *see also United States v. Moss*, 217 F.3d 426, 431 (6th Cir. 2000)("This circuit has categorically labeled drug offenses as serious."); *United States v. Kottmyer*, 961 F.2d 569, 572 (6th Cir. 1992). "[T]he first factor therefore favors a dismissal without prejudice." *See* Defendant's Supplemental Memo, at 11.

*ii) Facts and Circumstances Leading to the Dismissal*

Defendant alleges that there are two instances of STA non-compliance that require dismissal in this case. He claims that the thirty-day speedy trial clock lapsed between June and September of 2006 and again between January and March of 2007. *See* DE# 92 May 31 Hearing, at 105. Defendant agrees that no lapse occurred prior to June of 2006. *See id.*, at 102-03 (discussing parties' expectations at time, relative to effect of waiver).[9] The 2007 violation is undisputed, and the Court agrees that a violation also occurred in 2006.

---

[9]

The waiver, though of dubious effect, certainly acts as strong evidence of active plea negotiations at the time. By its very terms, Defendant agrees there were "ongoing plea negotiations" in May of 2006. *See* DE# 91 Exhibit 1.

The United States denies the alleged 2006 infraction, and contends that plea negotiations tolled the STA from March of 2006 until late January of 2007,[10] under *United States v. Bowers*, 834 F.2d 607, 610 (6th Cir. 1987). In *Bowers*, the Sixth Circuit recognized that the Speedy Trial Act computation excludes the "plea bargaining process." *See Bowers*, 834 F.2d at 610. The Court, however, cannot reasonably categorize the dormant period from mid-June to September of 2006 as involving plea negotiations in accordance with *Bowers*. *See, e.g., United States v. Hill*, 1999 WL 17645, at *2 n.3 (6th Cir. Jan. 4, 1999)("[T]he exclusion for plea bargaining proceedings under *Bowers* should not be viewed as unlimited, or otherwise abused.").

Here, between the third proffer session on June 14, 2006 and the tendered plea agreement on September 5, 2006, the record reflects **no** communication or contact between the United States and the defense regarding the investigation, Defendant's cooperation, or a negotiated resolution of the pending federal charge.[11] *See* May 29 Hearing, at 34-35 ("We had left the meeting . . . awaiting further direction by Special Agent Gray as to how to proceed next. We had not received any further direction, any further requests for information, any further contact from the United States, except for the state indictment [in late August] that gave us concern."); *see also id.* at 30-31. Moreover, at the June 14 meeting, the United States assumed the responsibility of moving forward with negotiations. According to Gibson, Agent Gray explained that he needed to pursue "approval" and that he would

---

[10]

The United States broadly categorizes the negotiation period as continuing "until January 29, 2007, when the Defendant revoked his waiver." *See* DE#95, Supplemental Response, at 2.

[11]

The testimony reflects that some limited contact between Defendant and the United States may have occurred before the September 1 plea agreement relating to the state indictments. *See* May 29 Hearing, at 33 (indicating that Gibson received notice of the indictments just before he received the proposed plea agreement in September).

14

make contact after receiving that authorization. *See id.* at 22 ("Q: "[T]he expectation at least from your perspective, was that information would be coming back from Agent Gray regarding additional steps or additional actions Mr. Redmond could take that would follow permissions and clearance from [DEA superiors]. A: Absolutely correct."); *see also id.* at 20. Agent Gray, however, did not follow-up. The next contact, relevant to the pending federal charge, occurred on September 1, when AUSA Hatfield mailed the plea agreement. *See id.* at 22, 30-31. Negotiations were inactive between the June 14 proffer session and receipt of the draft plea agreement.

In reviewing the circumstances, the Court is careful to consider Defendant's case in the context of a larger investigation, and the Court also realizes that Agent Gray may have needed time to pursue authorization and to verify the information provided at the June 14 meeting. However, these circumstances do not reasonably excuse the full 11+ week gap in communication that actually occurred, particularly given the prosecutor's absence from and lack of involvement in the June meeting.[12]  In the Court's view, allowing the United States to characterize this period as "plea negotiations" would "abuse" the term under *Bowers* and "lead to evasion of the Act's requirements." *See United States v. Hill*, 1999 WL 17645, at *2 n.3 (6th Cir. Jan. 4, 1999).

Some limited and reasonable delay to permit evaluation, as part of the negotiation process, would seem proper. Indeed, courts have approved of temporally-sensible windows for **active** negotiations related to the plea process. *See, e.g., United States v. Dunbar*, 357 F.3d 582, 593 (6th Cir. 2004)(approving as excluded "plea negotiations for thirty days" where existence of negotiations

---

[12]
The record did not establish that the AUSA arranged the June meeting, and the prosecutor did not participate in or follow-up after that meeting. *See, e.g.,* DE# 91 May 29 Hearing, at 108-09. Further, the DEA Agent was not involved in or consulted concerning the terms of the September plea agreement sent by the United States. *See* DE# 92 May 31 Hearing, at 30.

not contested) *vacated on other grounds by* 125 S. Ct. 1029 (2005); *United States v. Coviello*, 2006 WL 83124, at *2 (N.D. Ohio Jan. 11, 2006)(approving exclusion of period jointly described as "active plea negotiations" involving exchanges of proffers and plea agreements, over a period of approximately seven months).  Here, no testimony reflects any negotiations, or active step toward negotiations, in the period from mid-June to early September of 2006. *See, e.g.*, DE# 91 May 29 Hearing, at 30-31 (Gibson noting "no discussion" of plea during interval and stating, concerning negotiation: "There was absolutely no contact or communication from any agent of the United States" to the defense during time frame.).  Nor did Agent Gray's testimony justify the delay by investigative or other exigencies.

Permitting such a period of uncontested inactivity to qualify as excludable, particularly without court oversight or involvement at the time, would place the parties wholly in charge of STA compliance and would neglect the public's interest in the prompt administration of justice.  *See Zedner*, 126 S. Ct. at 1985 (noting that the STA is not designed "solely to protect a defendant's right to a speedy trial . . . . But the Act was designed with the public interest firmly in mind."); 18 U.S.C. § 3161(h)(8)(continuance option, permitting approval by court upon consideration, inter alia, of "the **best interest of the public** and the defendant in a speedy trial")(emphasis added).

Plainly, multiple instances of STA non-compliance raise concerns under the second statutory factor.  Repeated violations could reflect a "pattern of neglect" by the Government. *See Taylor*, 108 S.Ct. at 2420-21; *United States v. Kottmyer*, 961 F.2d 569, 573 (6th Cir. 1992); *Robinson*, 389 F.3d at 589; *Howard*, 218 F.3d at 562.  According to the Supreme Court, a finding that suggests "something more than an isolated unwitting violation" cuts against the United States. *See Taylor*, 108 S.Ct. at 2421.

16

In this case, based on the complete range of conduct and interactions established in the record, the Court finds that the two violations, considered individually or collectively, do not warrant the extreme remedy of dismissal with prejudice. Here, each violation was plainly unintentional, inadvertent, and contributed to by both parties. *See Kottmyer*, 961 F.2d at 573 (noting that the defendants did not present evidence of "intentional dilatory conduct"). In 2006, the record indicates that Defendant and the United States continued (subjectively) to operate under Defendant's purported Speedy Trial Act waiver. The Supreme Court decision in *Zedner v United States*, 126 S.Ct. 1976, 1987 (2006) unquestionably invalidated the waiver no later than June 5, 2006, but the parties apparently continued unaware of the decision and its impact throughout 2006. The Court cannot harshly penalize the United States under these circumstances, especially since Defendant voluntarily agreed to the waiver and did not question its effectiveness, at least until after January 29, 2007. *See United States v. Bennett*, 2006 WL 3513821, at *7 (N.D. Ind. Dec. 4, 2006)("Second, the circumstances leading to the delay at issue are not the fault of either the government or Defendants. Apparently, all three parties believed that Defendant's agreement to the continuance . . . was proper."); *United States v. Saltzman*, 984 F.2d 1087, 1094 (10th Cir. 1993)("Defendant did not only wait passively, but completely acquiesced to the postponement of the indictment."). With respect to the entirety of the time since arrest, neither side has acted with urgency relative to the prosecution or resolution of the case.

Even after Defendant revoked the waiver, miscommunications between the United States and Defense counsel contributed toward the STA violation. Indeed, it appears that the United States was unsure whether Defendant still intended to cooperate or was refusing to negotiate. Counsel's evasive response to the Government's late inquiries–in essence, "Please do not form assumptions related to

17

Mr. Redmond"–confused the United States and certainly did not clearly state Defendant's position. The United States, which had gone through some relevant personnel changes during the period,[13] can be excused for uncertainty about Defendant's intentions at the time.

In addressing the second statutory factor, Defendant also emphasizes that a one-year period passed between Defendant's arrest and untimely indictment. *See* May 31 Hearing, at 105. He further characterizes the Government's delay and inattention in this matter as "gross neglect." *See id.* at 109-110. According to the Supreme Court, "[t]he length of the delay [is] a measure of the seriousness of the speedy trial violation." *See Taylor*, 108 S.Ct. at 2421. Likewise, "a truly neglectful attitude on the part of the Government reasonably could be factored against it." *See id.* at 2420.

Here, however, it plainly would be inappropriate to attribute the full one-year delay to the United States. Defendant complains of no Speedy Trial Act violations prior to June of 2006. *See* May 31 Hearing, at 102-03, 105. Because the Government tendered a plea agreement on September 5, 2006 and the Defendant did not reject the agreement or otherwise terminate negotiations until January 29, 2007, both sides agree that this period of time is excludable, and certainly not chargeable to United States. *See id.* at 107-108; *see also Bowers*, 834 F.2d at 610 (finding that "failure by the defendant . . . to communicate to the government his rejection of a tentative plea agreement" is not chargeable to the United States under the STA).

Thus, the non-excludable time in this case is confined to 83 days between the third proffer

---

[13]

The transition from AUSA Hatfield to AUSA McBride, with an interim appearance by AUSA Smith, undoubtedly contributed to the communication difficulties between the defense and prosecution. The Court can not fault the United States for some disruption resulting from normal case transfers among its prosecutors.

session on June 14, 2006 and the tendered plea agreement on September 5, 2006, and 32 days

between the January 29, 2007 waiver revocation and the untimely indictment issued on March 2,

2007. *See* May 31 Hearing, at 105.    After subtracting the thirty-day indictment clock, the record

reveals a relatively limited amount of unexcused delay–approximately 85 days. *See e.g., Robinson,*

389 F.3d at 589 ("We find that a 59-day delay, while not insubstantial, is not so substantial that

dismissal with prejudice is mandated regardless of the other circumstances.")(quoting *United States*

*v. Koory,* 20 F.3d 844, 848 (8th Cir. 1994)).  In view of the delay actually attributable to the United

States and the underlying circumstances of each violation, the Court could not reasonably classify

the Government's conduct in this matter as "truly neglectful." *See Taylor,* 108 S.Ct. at 2420.

Finally, Defendant did not accuse the United States of bad faith or deception, and there is no

allegation or evidence that the United States used the pre-indictment delay to gain a tactical

advantage. *See* May 31 Hearing, at 109-110.  Thus, the remaining reasons that may support

dismissal with prejudice are absent from this case. *See United States v. Pierce,* 17 F.3d 146, 149 (6th

Cir. 1994); *see also Robinson,* 389 F.3d at 588-89.

In sum, the Court finds that the facts and circumstances do not merit dismissal with

prejudice. Neither instance of non-compliance reflects bad faith or complete inattention and neglect.

Inadvertent, mutual reliance on Defendant's purported waiver in a changing legal landscape, and

investigative priorities partially explain the 2006 delay, and miscommunication contributed to the

2007 violation. In the Court's view, these facts do not indicate a "pattern of neglect." Moreover,

the United States fairly is responsible for only a portion of the overall delay.  The period from

September to the end of January, when Defendant sat on the plea agreement, indicates shared

19

responsibility for the lack of progress toward conclusion of the case.[14]

### iii) Impact of Reprosecution on the Administration of the Act and of Justice

As noted, this case involves no allegations of bad faith or misconduct, and the record reflects that the United States is not fully responsible for the overall delay or the STA violations that actually occurred. *See* May 31 Hearing, at 109-110; *Pierce*, 17 F.3d at 149; *Robinson* 389 F.3d at 588-89. Furthermore, the crime alleged in the indictment is a serious offense, and there is strong public interest in having the charge pursued. *See United States v. Becerra*, 435 F.3d 931, 937 (8th Cir. 2006); *see also United States v. Mendoza*, 1994 WL 526711, at * 4 (6th Cir. Sept. 27, 1994). As such, the Court finds that the value of deterring the Government's non-compliance under these circumstances does not justify the heavy sanction of foreclosed reprosecution. *See Howard*, 218 F.3d at 562 (stating third statutory factor considers "whether the government engaged in prosecutorial misconduct that must be deterred to ensure compliance with the Act"). In this context, the third statutory factor supports dismissal without prejudice.

A complete evaluation under the final factor, however, must also consider any prejudice that Defendant suffered as a result of the delay. *See Robinson*, 389 F.3d at 589. In this case, Defendant alleges no actual prejudice to his defense or trial preparation. *See Howard*, 218 F.3d at 562 (finding the defendant "was unable to identify any particularized prejudice to his defense" under the third factor). Defendant does claim that he has "suffered disruption to his employment opportunities and

---

[14]

    Certainly, then, Defendant's obliquely-raised due process issues likewise fail. Pre-indictment delay rises to the level of a due process violation only if the delay causes both prejudice to a defendant's right to a fair trial and the delay "was intentionally caused by the government in order to gain a tactical advantage." *United States v. Atchley*, 474 F.3d 840, 852 (6th Cir. 2007). Defendant neither argues or establishes either required prong.

20

consequent drain on his financial resources." *See* Defendant's Supplemental Memo, at 13. Defendant asserts that he is now indigent and "unable to retain counsel of his choice." *See id.* He argues that the deprivation of his right to *select* counsel requires dismissal with prejudice. *See United States v. Gonzalez-Lopez*, 126 S.Ct. 2557, 2563 (2006).

The Court agrees that Defendant has suffered hardships and prejudice as a result of the delay in this matter, but Defendant's argument unfairly saddles the United States with full responsibility. *See Taylor*, 108 S.Ct. at 2421. Here, Defendant agreed to cooperate, attempted to waive his rights under the Speedy Trial Act, and is primarily accountable for the period between September 5, 2006 and January 29, 2007 because he failed to reject or meaningfully respond to the tendered plea agreement. The period between September of 2006 and January of 2007 itself exceeds the time chargeable to the United States under the Speedy Trial Act and highlights Defendant's own significant role in causing the delay and its consequences.

Further, Mr. Gibson's replacement in the case, as chosen counsel, resulted as much from Defendant's evidentiary motions as it did from the STA inquiry. Gibson withdrew because he perceived a need to testify on the pending motions, and the Court granted the withdrawal request. *See* DE# 56 & 64. The defense's motion to suppress the proffer statements hinged on Gibson's testimony as much as the STA motion did. Defendant's pre-trial motion practice, even without the STA issues, would have resulted in Gibson's withdrawal.

C.

In sum, the Court finds that no factor supports dismissal with prejudice. This case involves a serious alleged offense. Although the facts and circumstances indicate two instances of non-compliance, there is no allegation of bad faith or misconduct. Rather, the record indicates that each

21

infraction resulted from inadvertence or miscommunication. Furthermore, in light of the serious crime involved, and because this matter does not involve bad faith or intentional dilatory conduct, dismissing the case with prejudice would not serve the interests of the Act or the administration of justice. The Court recognizes Defendant's hardships, but Defendant cannot fairly assign the full measure or indeed even most of those difficulties to the Government's behavior. Both parties share responsibility for the delay and its consequences in the matter. For these reasons, the Court recommends dismissal without prejudice.

The Court further emphasizes that dismissal without prejudice is not a "toothless sanction." *See Taylor*, 108 S.Ct. at 2422. The dismissal forces the United States to expend time and resources to reprosecute. *See id.* In this case, dismissal without prejudice is a sufficient deterrent and commensurate with the Speedy Trial Action violations that occurred.

D.

Because the Court finds that dismissal without prejudice is appropriate, the United States contends that dismissal of the indictment is unnecessary at this stage of the proceedings. The Government mistakenly contends that "Defendant obtained his remedy and the Complaint was dismissed." *See* DE# 95 Supplemental Response, at 2.

At the time Defendant originally filed to dismiss the complaint, the Government conceded the STA violation, and the Court ordered Defendant's release *anticipating* dismissal of the complaint under the Speedy Trial Act. *See* DE# 35. According to the order, the "action remain[ed] on the docket for a substantive ruling on the pending Motion to Dismiss." *See id.* On the same day of that order, and before the Court could address the pending motion, the Government secured an indictment against Defendant. As a result, the Court denied Defendant's motion to dismiss as moot,

22

and directed Defendant to re-file the motion as to the indictment itself. *See* DE# 41. Therefore, no remedy relating to the Speedy Trial Act violation ever issued in this case.

Dismissal is mandatory. If an indictment is filed outside the STA time limit (or is simply unissued), the Act directs the district court to dismiss the *charge* contained in the complaint. *See* 18 U.S.C. § 3162(a)(1) ("If . . . no indictment or information is filed within the time limit . . . such *charge* against that individual contained in such complaint shall be dismissed.")(emphasis added). Here, the Government repeatedly acknowledged that the complaint and indictment allege the same charge. *See* May 29 Hearing, at 147; May 31 Hearing, at 126-27. Thus, even though the indictment succeeded the complaint, the Act still requires dismissal of the *charge* or *crime* subject to the STA violation. *See United States v. Garcia-Echaverria*, 374 F.3d 440, 450 n.13 (6th Cir. 2004)("The appropriate remedy for a violation of § 3161(b) is dismissal of the indictment."); *see also United States v. Ewing*, 1994 WL 577055, at *1-2 (6th Cir. Oct. 18, 1994)(approving dismissal of the indictment without prejudice for failure to indict within 30 days of arrest under § 3161(b)); *United States v. Martinez-Espinoza*, 299 F.3d 414, 416 (5th Cir. 2002)("The STA requires dismissal where an indictment is filed more than a specified number of days after the charge."); *United States v. Thompson*, 2007 WL 685689, at *2 (N.D. Okla. Feb. 23, 2007)("§ 3162(a)(1) mandates the dismissal of an indictment if 'no indictment . . . is filed within the [STA] time limit.'")(quotation omitted); *United States v. Saravia*, 851 F. Supp. 490, 493 (D. Me. 1994)("Having found a violation of section 3161(b), the Court must dismiss the indictment pursuant to section 3162(a)(1), which provides that dismissal shall follow when no indictment . . . is timely filed.").

As such, and absent a sufficient distinction between the complaint and indictment, *see supra* n. 8, the Act compels the Court to recommend dismissal of the indictment. Per the enumerated STA

23

factors, as evaluated, the dismissal should be without prejudice.[15]

## Recommendation

For the foregoing reasons, the Court recommends that the District Court dismiss the indictment without prejudice. The Court also recommends that the District Court consider setting a date for the release of Defendant that permits the United States, if it so chooses, to pursue reindictment prior to the release date. *See* Fed. R. Crim. P. 12(g)(permitting court to detain a defendant, under § 3142, "for a specified time until a new indictment . . . is filed" if court "grants a motion to dismiss based on a defect . . . in the indictment").[16]

The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights concerning this recommendation, issued under subsection (B) of said statute. As defined by § 636(b)(1), Rule 59,

---

[15]

Defendant suggests that, if the Court were to conclude that the dismissal should be without prejudice, the indictment can continue unaffected. *See* DE# 92 May 31 Hearing, at 104. Defendant cites *United States v. Bittle*, 699 F.2d 1201 (D.C. Cir. 1983) to support its position. *Bittle* is quite different. In *Bittle*, the government actually had secured dismissal of a complaint after the indictment deadline, but the court made no finding as to the character (*i.e.*, with or without prejudice) of the dismissal. On later indictment, the *Bittle* court concluded that if the original dismissal should have been without prejudice, the indictment could continue. Dismissal of the complaint demonstrates that the defendant received the STA remedy. Whether the later indictment was vulnerable to dismissal depended only on whether the prior dismissal should or should not have barred reprosecution. Here, the Court did not dismiss the complaint, plainly distinguishing this action from *Bittle*.

It may be that Defendant's position with respect to a "without prejudice" dismissal reflects his desire to get to trial and "have it resolved." *See* DE# 91 May 29 Hearing, at 107. In the Court's view, if dismissal is required, and if the dismissal should be without prejudice, the STA would require a solemn waiver of its retroactive § 3162(a)(1) remedy, in order to be effective. *Cf.* § 3162(a)(2)(providing that defendant waives remedy "under this section" by failing "to move for dismissal prior to trial or entry of a plea").

[16]

The Court premises this suggestion on the history in this case, which includes Defendant's prior revocation under § 3148, *see* DE# 28, Defendant's current detention, *see* DE# 47 , and the United States' clear intention to prosecute this matter to conclusion.

24

and local rule, and by agreement of counsel, *see* DE# 88, within **three days** after being served with a copy of this recommended decision, any party may serve and file written objections to any or all portions for consideration, de novo, by the District Court, with responses filed within three days thereafter. *See also* Fed. R. Crim. P. 59.

This 25th day of June, 2007.

Signed By:

**Robert E. Wier**

**United States Magistrate Judge**